UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION


CORINTHEUS M. ASH,

      Petitioner,

v.                                                    Case No. 5:18cv2-MCR-HTC

MARK S. INCH,

      Respondent.

_____/

## REPORT AND RECOMMENDATION

Petitioner, Corintheus M. Ash, proceeding *pro se* and *in forma pauperis*, filed an amended petition under 28 U.S.C. § 2254. ECF Doc. 14. The matter was referred to the undersigned Magistrate Judge for preliminary screening and report and recommendation pursuant to 28 U.S.C. § 636 and N.D. Fla. Loc. R. 72.2(B). After considering the amended petition and the State's response (ECF Doc. 20),[1] the undersigned recommends the Petition be DENIED without an evidentiary hearing. Specifically, four of Petitioner's five claims are procedurally defaulted and his only non-defaulted claim fails as a purely state matter that is not subject to federal habeas review and otherwise fails on the merits.

_____

[1] Ash was given thirty (30) days to file a reply but did not do so. ECF Doc. 21.

## I.    BACKGROUND

Ash challenges his conviction for felon in possession of a firearm in violation of Florida Statutes 775.087 and 790.23 and his sentencing as a habitual felony offender.  ECF Doc. 14 at 1.  The firearm involved was found during the execution of a search warrant at his house for items that may have been taken or used during a series of burglaries involving the teenage son of Ash's girlfriend.  The pertinent facts relating to that search and Ash's subsequent arrest are discussed below.

In April of 2014, the Panama City and Parker police departments were investigating a series of break-ins at local schools involving the theft of small electronics, such as iPads and iPods.  ECF Doc. 20-3 at 34.  Ash's girlfriend's son was questioned by police and admitted to being involved.  Based on information received from the son, a search warrant was obtained to search 141 Cheri Lane in Panama City, Florida, to look for evidence of the burglaries.  ECF Doc. 20-1 at 48.  Detective Phinney, who obtained the warrant, testified at a suppression hearing that the son, during questioning by police, gave him the Cheri Lane address, stating that he and his mother lived there.  ECF Doc. 20-3 at 31.

The warrant allowed a search for "computer equipment to include: I-pads, I-pods, digital cameras, and other electronic equipment," clothing matching the description of clothing worn by the suspects, and proof of the son's residency at the property.  ECF Doc. 20-1 at 94.  The warrant allowed the search to be conducted on

the premises, curtilage, vehicles and persons present. *Id.* at 91. At the time the police executed the warrant, only the son was considered a suspect as to any crime.

Police arrived at the home on April 22, 2014, to conduct the search. Only Ash and his girlfriend were at the house because the son was in custody. Two officers were stationed behind the residence to observe, while the rest approached the front door. *Id.* at 33. One of the officers stationed at the back, Detective Joe Adams, heard the knock on the front door and then immediately saw a second-story back window on the house open. A dark-skinned hand reached out of the window and placed a small black bag on the awning outside the window. Detective Adams was not able to identify to whom the hand belonged. *Id.* Detective Adams also could not discern what was in the bag. Detective Adams then proceeded inside the house to the room that contained the window. *Id.* at 34.

In the meantime, Ash's girlfriend answered the front door, and officers began to go room to room searching for small electronics and other evidence of the burglaries. ECF Doc. 20-3 at 14. The girlfriend claimed she only gave consent to search her son's room and was never asked for consent to search the rest of the house.

When Detective Adams came inside the house and reached the room which contained the window that had been opened, Ash followed him inside. When Detective Adams asked Ash and his girlfriend about the bag, Ash moved toward the window and Detective Adams stopped him. According to Detective Adams'

testimony in the suppression hearing, Ash then "began to make utterances saying that he had just been out of prison and he needed that to protect his family, things of that nature." *Id.* at 35. Detective Adams retrieved the bag and found a small handgun in it.

Ash was charged on June 9, 2014, as being a felon in possession of a firearm, ECF Doc. 20-1 at 25. He filed a motion to suppress, arguing officers exceeded the scope of the search warrant and never received lawful consent from him to extend the search beyond the scope of the warrant, even though he was the sole and lawful owner of the residence. ECF Doc. 20-1 at 80. An evidentiary hearing was held on the motion to suppress, ECF Doc. 20-3, and the trial court denied the motion by written order. ECF Doc. 20-1 at 128.

The matter proceeded to trial. Detective Adams and the girlfriend were the only witnesses who testified at trial, and they testified consistently with their testimony at the suppression hearing. The jury found Ash guilty of the offense of felon in possession of a firearm but answered, "No", to the special interrogatory which asked, "Did the Defendant actually possess a firearm?" ECF Doc. 20-1 at 168.

The State filed a notice of intent to sentence Ash as a habitual felony offender ("HFO"), ECF Doc. 20-1 at 170, and the Court entered an order finding that the HFO

enhancement applied. *Id.* at 187. The Court sentenced Ash to a term of 60 months' imprisonment. *Id.* at 183.

Ash filed a direct appeal. ECF Doc. 20-9 at 5. The First DCA affirmed without written opinion, *Id.* at 73. Ash also filed a series of motions in state court culminating in an amended motion for postconviction relief. ECF Doc. 20-10 at 11. The state court denied the motion on February 26, 2018. ECF Doc. 20-11 at 2. Ash appealed on March 12, 2018, ECF Doc. 20-12, and on August 7, 2018, the appeal was dismissed for failure to prosecute. ECF Doc. 20-12 at 22.

Prior to the state court's denial of Ash's post-conviction motion, Ash filed the original federal petition in this action on December 27, 2017, by delivering it to prison mail officials on that date. ECF Doc. 1 at 9. Ash amended his petition on July 17, 2018. ECF Doc. 14. The State does not contest that the petition is timely filed. ECF Doc. 20 at 16.

## II. Mootness

According to the Florida Department of Corrections Offender Network web site, Ash was released from physical custody on January 3, 2020 but remains on conditional release supervision until October 3, 2020.[2] As an initial matter, Ash's release from physical custody, however, does not render his petition moot. A

---

[2] *See* http://www.dc.state.fl.us/offenderSearch/detail.aspx?Page=Detail&DCNumber=986134&TypeSearch=AO.

petitioner need not be under actual physical restraint to be "in custody" for purposes of the habeas statute. *Westberry v. Keith*, 434 F.2d 623, 624 (5th Cir. 1970). In the context of habeas proceedings, the "in custody" requirement may also be met where a petitioner is on probation, parole or bail. *Duvallon v. Fla.*, 691 F.2d 483, 484–85 (11th Cir. 1982) (citing *Hensley v. Municipal Court*, 411 U.S. 345, 349 (1973); *Jones v. Cunningham*, 371 U.S. 236, 243 (1963).

Additionally, the in-custody requirement is satisfied where restrictions are placed on a petitioner's freedom of action or movement. *See, e.g., Jones*, 371 U.S. at 243 (1963) (parolee still "in custody" of the parole board because the parole order imposed conditions that "significantly confine[d] and restrain[ed] his freedom"; habeas relief may be sought); *see also, Spencer v. Kemna*, 523 U.S. 1, 7 (1998) (incarcerated parolee's challenge to the validity of his conviction can be maintained if a 'collateral consequence' of the conviction still exists). Thus, Ash remains "in custody" for purposes of the habeas statute even though he has been released to supervision because the conditions on his release significantly confine and restrain his freedom. *See* Fla. Stat. § 947.1405; Fla. Admn. Code § 23-23.010.

## III.   LEGAL ANALYSIS

Ash raises five challenges to his conviction and sentence: (1) the search violated the Fourth Amendment; (2) his conviction was based in part on his confession during the search which resulted from police questioning before *Miranda*

warnings had been given; (3) he was charged with actual possession of the firearm but the jury found by special interrogatory that he had not actually possessed the firearm; (4) the state court proceeded with sentencing without conducting a *Nelson* hearing even though Ash had submitted a letter requesting one to the state attorney; and (5) Ash was sentenced as a habitual felony offender but possession of a firearm by a convicted felon is not a qualifying offense, and using a previous charge to enhance his sentence is a Double Jeopardy violation. *Id.* Grounds One through Three and Five are procedurally barred as they were not fairly presented to the state court. Ground Four is not subject to federal habeas review and also fails on the merits.

### A.    Exhaustion Of Available State Court Remedies

Before filing a habeas petition in federal court, a petitioner must exhaust all available state court remedies. 28 U.S.C. § 2254(b), (c). A failure to exhaust occurs "when a petitioner has not fairly presented every issue raised in his federal petition to the state's highest court, either on direct appeal or on collateral review." *Pope v. Sec'y for Dep't of Corr.*, 680 F.3d 1271, 1284 (11th Cir. 2012) (internal quotation marks and brackets omitted). For an issue to be "fairly presented," a petitioner must have "presented his claims to the state court such that a reasonable reader would understand each claim's particular legal basis and specific factual foundation."

*McNair v. Campbell*, 416 F.3d 1291, 1302 (11th Cir. 2005) (internal citations and quotations omitted).

If a petitioner fails to exhaust state remedies, the district court must generally dismiss the claims without prejudice to allow the petitioner an opportunity to present the claims before a state court. *Jimenez v. Fla. Dep't of Corr.*, 481 F.3d 1337, 1342 (11th Cir. 2007). However, if it is obvious that the unexhausted claim would be procedurally barred in state court, the federal court should treat the unexhausted claim as procedurally defaulted. *Henderson v. Campbell*, 353 F.3d 880, 891 (11th Cir. 2003); *see also Bailey v. Nagle*, 172 F.3d 1299, 1305 (11th Cir. 1999) (*per curiam*) ("federal courts may treat unexhausted claims as procedurally defaulted, even absent a state court determination to that effect, if it is clear from state law that any future attempts at exhaustion would be futile").

The only exception to the doctrine of procedural default is where a petitioner has established "cause and prejudice or the fundamental miscarriage of justice," *Smith v. Jones*, 256 F.3d 1135, 1138 (11th Cir. 2001). To establish cause for a procedural default, a petitioner "must demonstrate that some objective factor external to the defense impeded the effort to raise the claim properly in state court." *Wright v. Hopper*, 169 F.3d 695, 703 (11th Cir. 1999); *see also Murray v. Carrier*, 477 U.S. 478 (1986). To show prejudice, a petitioner must demonstrate not only that the errors at his trial created the possibility of prejudice, but that they worked to

his actual and substantial disadvantage and infected the entire trial with error of constitutional dimensions. *United States v. Frady*, 456 U.S. 152 (1982). The petitioner must show at least a reasonable probability of a different outcome. *Crawford v. Head*, 311 F.3d 1288, 1327-28 (11th Cir. 2002).

A fundamental miscarriage of justice occurs in an extraordinary case where a constitutional violation has probably resulted in the conviction of someone who is actually innocent. *Schlup v. Delo*, 513 U.S. 298, 327 (1995). "'[A]ctual innocence' means factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623 (1998). To meet this standard, a petitioner must show a reasonable likelihood of acquittal absent the constitutional error. *Schlup*, 513 U.S. at 327.

1. <u>Ground One: The Search of Ash's Residence Violated the Fourth Amendment</u>

Ash argues his Fourth Amendment Rights were violated when police searched his residence based on a search warrant obtained for a crime committed by a juvenile that was not living with him. This ground for relief is essentially one of trial court error for failing to suppress the evidence of the gun found during the search. Under Florida law, claims of trial court error are properly brought on direct appeal. *See Roberts v. Fla.*, No. 2:11-CV-364-FTM-38, 2014 WL 2600089, at *5 (M.D. Fla. June 9, 2014) (finding claim that Florida state court erred in denying motion to suppress procedurally barred from federal habeas review because it was not raised

on direct appeal, citing *Robinson v. State*, 913 So.2d 514, 524 n. 9 (Fla. 2005) and *Spencer v. State*, 842 So.2d 52, 60 (Fla. 2003)).

Although Ash filed a direct appeal, this ground for error was not one of the three issues Ash raised. ECF Doc. 20-9 at 5. Rather, in his direct appeal, Ash argued (1) the trial court erred in not conducting a preliminary *Nelson* inquiry prior to announcing the sentence; (2) the trial court erred in denying his motion for judgment of acquittal based on insufficient evidence that the item in the bag was a firearm; and (3) the evidence presented regarding the firearm was insufficient to sustain a guilty verdict. *Id.* Because the time for filing a direct appeal has long since expired, he cannot go back to state court to exhaust this issue.

Ash did raise two ineffective assistance of trial counsel ("IATC") claims in his post-conviction motion relating to the failure to file motions to suppress.[3] One claim was for failing to move to suppress the gun because the address obtained from the son did not match school records, and the other was for failing to suppress the

---

[3] Ash raised the following four issues in his post-conviction motion:
Ground 1: Ambiguous/Inconsistent Verdict: Found Guilty of Possession of a Firearm but No "Actual Possession."
Ground 2: Trial Counsel was Ineffective for Failing to Move to Suppress the Evidence Found at Petitioner's Home and the Testimony of the Woman Staying at his Home, since school records listed the juvenile's address as elsewhere and neither the juvenile nor his mother were listed as tenants.
Ground 3: Trial Counsel was Ineffective for Failing to Object to the Search of Petitioner's Residence Because the Search Warrant Was Issued "After The Fact" and Police Failed to Read Petitioner his Miranda Rights.
Ground 4: Trial Counsel was Ineffective for Failing to Object to the Designation of Petitioner as a Habitual Felony Offender Because Felon in Possession of a Firearm is Not a Qualifying Offense

gun because the warrant was issued after the fact and the gun was found without Ash being read his *Miranda* rights.  Neither of those IATC claims, however, saves his trial court error claim from being procedurally barred because a substantive claim of trial error is "separate and distinct" for purposes of federal habeas relief from an IATC claim.  *See  Pietri v. Fla. Dep't of Corr.*, 641 F.3d 1276, 1289 (11th Cir. 2011) (holding that federal habeas petitioner's substantive judicial bias claim was not the same claim as his ineffective assistance of appellate counsel claim based on counsel's failure to raise the substantive claim) (citing *Lefroy v. Sec'y for Fla. Dep't of Corr.*, 421 F.3d 1237, 1260 n.24 (11th Cir. 2005) (noting the substantive claim was "separate and distinct" from ineffective assistance claim based on substantive claim)); *Walker v. Jones*, 10 F.3d 1569, 1572 (11th Cir. 1994) (holding that ineffective assistance claim based on counsel's failure to object to jury instruction was not the same as substantive due process claim challenging the trial court's giving of that instruction).

Additionally, Ash cannot return to state court to file a new post-conviction motion to exhaust this ground for relief.  Under Florida law, with limited exceptions that do not apply here, a defendant must file his motion for post-conviction relief in a non-capital case within two (2) years of the date on which the judgment and sentence became final.  Rule 3.850(b), Fla. R. Crim. P.  A new 3.850 motion would also be denied as successive and Ash has not asserted any facts supporting a finding

of good cause for his failure to assert the federal grounds in a prior 3.850 motion. *See* Fla. R. Crim. P. 3.850(h)(2); *Koons v. State*, 165 So. 3d 718, 719 (Fla. Dist. Ct. App. 2015) (citing *Christopher v. State*, 489 So.2d 22, 24 (Fla.1986)).

Accordingly, the undersigned finds this ground for relief is procedurally defaulted. Ash should have raised this ground of trial court error on direct appeal and cannot now return to state court to do so. *See Bailey v. Nagle*, 172 F.3d 1299, 1305 (11th Cir. 1999) (*per curiam*) ("[F]ederal courts may treat unexhausted claims as procedurally defaulted, even absent a state court determination to that effect, if it is clear from state law that any future attempts at exhaustion would be futile.").

The undersigned further finds that Ash cannot avail himself of the "cause and prejudice" exception. First, Ash has failed to demonstrate any objective factor that prevented Ash from raising this ground of trial court error on direct appeal. Indeed, as stated above, Ash moved to suppress the evidence from the search *albeit* on different grounds than raised in his post-conviction motion and, thus, had taken issue with the admission of the firearm evidence at trial (and should have on appeal).

Second, a federal court cannot entertain a violation of a habeas petitioner's Fourth Amendment rights if the petitioner had an opportunity for full and fair consideration of his claim in the state courts. *See Stone v. Powell*, 428 U.S. 465 (1986); *Bradley v. Nagle*, 212 F.3d 559, 564 (11th Cir.2000). "[F]ull and fair consideration requires consideration by the fact-finding court, and at least the

availability of meaningful appellate review by a higher state court." *Mincey v. Head*, 206 F.3d 1106, 1126 (11th Cir. 2000).

The State court's denial of the motion to suppress after development at the evidentiary hearing triggers the bar of *Stone v. Powell*, precluding federal review of Ash's Fourth Amendment claim. The fact that Ash did not raise the issue on appeal is inconsequential; the critical fact is Ash could have appealed the denial of that motion under Florida's procedural rules. *See Roberts*, 2014 WL 2600089, at *6 ("Petitioner does not demonstrate that the suppression hearing conducted by the trial court (and the review of trial court's conclusions by the appellate court had he pursued that relief) did not afford him a full and fair opportunity to develop the factual issues of his case."). An allegation of state court error in denying a motion to suppress does not suffice to avoid the *Stone* bar. *See Swicegood v. Alabama*, 577 F.2d 1322, 1324 (5th Cir. 1978) (holding that the *Stone* bar applies despite an error by the state court in deciding the merits of a Fourth Amendment claim.)

Third, the trial court did not err in denying the motion to suppress as it was supported by probable cause, was not overly broad, and included the bag and the bedroom containing the window. "Probable cause to support a search warrant exists when the totality of the circumstances allow a conclusion that there is a fair probability of finding contraband or evidence at a particular location." *United States v. Brundidge*, 170 F.3d 1350, 1352 (11th Cir. 1999) (citing *United States v.*

*Gonzalez*, 940 F.2d 1413, 1419 (11th Cir. 1991)).  The totality of the circumstances includes the "veracity" and "basis of knowledge" of persons supplying hearsay information.  *Illinois v. Gates*, 462 U.S. 213, 238 (1983).

Officers obtained Ash's address for the warrant from Ash's girlfriend's son, who had confessed to the burglaries and who stated he lived in the residence.  There was no reason for officers to think the son would lie about his residence.  Moreover, the son's mother was at the residence when officers arrived to conduct the search. Thus, the investigators acted in good faith in relying upon his information in preparing the search warrant application.

Also, the scope of the search warrant properly included the bag in which the firearm was found.  In *State v. Martinez*, 71 So.3d 945 (Fla. 3rd DCA 2011), the court held that the search warrant gives officers "the authority to search through any containers that would reasonably contain the items specified in the warrant."  The bag in which the gun was found was in plain sight when observed by Detective Adams and also was the right size to potentially contain evidence of the burglaries. In *Jones v. State*, 895 So.2d 1246 (Fla. 2nd DCA 2005), the court determined that police officers may open a container if such a container could reasonably contain the items they were looking for.  Thus, officers did not exceed the bounds of the search warrant and additional consent was not needed to search the bedroom containing the window out of which the gun was moved.

Finally, the search warrant was not overbroad.  Instead, it was limited to items that might have been taken in the burglaries, worn by the suspects, or which proved that the suspect lived in the residence.  *Harris v. United States*, 331 U.S. 145, 153–54 (1947) ("the test is whether the search was a general exploration or specifically directed to the means and instrumentalities by which the crime charged had been committed").  It was not for a "general" search, which is prohibited by the Fourth Amendment.  *See* U.S. Const. amend. IV; *Maryland v. Garrison*, 480 U.S. 79, 84 (1987) ("The manifest purpose of this particularity requirement was to prevent general searches.  By limiting the authorization to search to the specific areas and things for which there is probable cause to search, the requirement ensures that the search will be carefully tailored to its justifications and will not take on the character of the wide-ranging exploratory searches the Framers intended to prohibit.").

Ash therefore cannot show he has been prejudiced by any trial court error and further has not asserted he is actually innocent of the offense.  Accordingly, Ash is not entitled to relief on this ground of trial court error.

### 2.    Ground Two:  Violation of *Miranda* Rights

Ash argues his *Miranda* rights were violated because he was "overborne" and questioned without counsel present and contends the trial court erred in admitting into evidence his utterances that he had just been out of prison and needed to protect his family.  ECF Doc. 14 at 6.  He also argues he asked to see the search warrant and

was not informed of the crime by investigators. This resulted in him being "illegally and involuntarily interrogated" in violation of the Sixth Amendment. *Id.*

As with Ground One, this issue of trial court error was also not raised on direct appeal and is procedurally defaulted because Ash cannot now return to state court to exhaust this ground for relief either on a direct appeal or with a new 3.850 motion.

Also, as with Ground One, the undersigned finds that Ash cannot avail himself of the cause and prejudice or manifest injustice exceptions. He has shown no objective factors for failing to raise this claim on direct appeal or in his 3.850 motion. Additionally, he cannot show a reasonable probability that the result of the proceeding would have been different because there was no *Miranda* violation.

"*Miranda* safeguards come into play whenever a person in custody is subjected to either express questioning or its functional equivalent." *Rhode Island v. Innis*, 446 U.S. 291, 301 (1980). This includes "any words or actions on the part of the police . . . that the police should know are reasonably likely to elicit an incriminating response from the suspect." *Innis*, 446 U.S. at 301. However, "[a]ny statement given freely and voluntarily without any compelling influences is . . . admissible." *Arizona v. Mauro*, 481 U.S. 520, 529 (1987)(quoting *Miranda*, 384 U.S. at 478). "In deciding whether particular police conduct is interrogation, [a court] must remember the purpose [of *Miranda*]: preventing government officials from using the coercive nature of confinement to extract confessions that would not

be given in an unrestrained environment." *Mauro*, 481 U.S. at 529–30.  Where a suspect is not subject to "compelling influences, psychological ploys, or direct questioning . . . [,] volunteered statements cannot properly be considered the result of police interrogation." *Id.* at 429.

The testimonies from Ash's girlfriend and Detective Adams, who heard the statements by Ash, support a finding that Ash's statements were made spontaneously and voluntarily and at a time when he was not in custody.  At the motion to suppress hearing, Detective Adams testified he asked Ash, who he did not know by name, about the bag and asked him to stop walking towards it (because Adams did not know what was inside of it).  That is when Ash "began to make utterances saying that he had just been out of prison and he needed to protect his family, things of that nature."[4]  ECF Doc. 20-3 at 35.  Detective Adams confirmed he did not consider Ash a suspect at that point and Ash was not being arrested or detained.  *Id.*

Similarly, Ash's girlfriend testified that at the time Ash made the utterances he had not yet been told to "sit on the couch" or handcuffed.  *Id.* at 19-20.  At trial, Detective Adams testified, "Once I came into the room and I initially asked what was going on with the item that was placed outside, Mr. Ash begin walking towards the window, at which point I stopped him and then he decided to state several things

---

[4] There was also testimony from the girlfriend during the suppression hearing, over a hearsay objection, that Ash said the gun was his.  The State, however, did not attempt to use that statement at trial.  ECF Doc. 20-3 at 19.

about needing whatever was out there to protect himself and his family." ECF Doc. 20-6 at 52. Ash's girlfriend testified at trial that she did not place the gun outside and that only she and Ash had been in the house that morning. *Id.* at 85-86.

The testimony shows that Ash voluntarily entered the room and moved toward the window in response to Adams's questions about the bag. Although Detective Adams told Ash to stop moving toward the bag, that momentary restraint was related to officer safety and did not rise to the level of a "formal arrest or restraint on freedom of movement of the degree associated with a formal arrest." *United States v. Brown*, 441 F.3d 1330, 1347 (11th Cir. 2006) (citation omitted) (quoting *California v. Beheler*, 463 U.S. 1121, 1125 (1983)). Ash was never told he was not free to leave and prior to making the statements was not handcuffed or otherwise restrained. No guns were drawn or other indicia of coercion present. Thus, the statements by Ash were not while he was "in custody." *See Brown*, 441 F.3d at 1347 (whether a suspect is in custody "depends on whether under the totality of the circumstances, a reasonable [person] in [her] position would feel a restraint on [her] freedom of movement to such extent that [s]he would not feel free to leave").

Also, Ash's comments were not in response to an interrogation. Interrogation for *Miranda* purposes "means 'any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect.'" *United*

*States v. Gomez*, 927 F.2d 1530, 1538 (11th Cir. 1991) (alteration in original) (quoting *Rhode Island v. Innis*, 446 U.S. 291, 301 (1980)).  When Ash made the statements at issue, he was not considered a suspect in any crime and Detective Adams did not know who Ash was, much less his criminal history.  Thus, the record is devoid of any facts which would have given Detective Adams any reason to believe that Ash would say something to incriminate himself in response to Detective Adams telling him not to approach the window.

Because Ash made the statements voluntarily and not in response to custodial interrogation, the *Miranda* warning protections do not apply.  *See United States v. Soleimani*, No. 118CR00216ELRRGV, 2019 WL 7559295, at *16 (N.D. Ga. Sept. 25, 2019), *report and recommendation adopted*, No. 0118CR00216ELRRGV, 2019 WL 6002409 (N.D. Ga. Nov. 14, 2019) ("In sum, because [defendant] was not subject to custodial interrogation when the agents spoke with her at the airport on September 6, 2016, *Miranda* warnings were not required.").  Ash, thus, cannot avail himself of the cause and prejudice exception and further has not alleged he is actually innocent.

### 3.  Ground Three: Conviction for Possession of a Firearm Without a Finding of Actual Possession

Ash argues he was found not guilty of the actual charge in the Information, which he contends was "actual possession of firearm."  ECF Doc. 14 at 7.  Instead, the jury by special interrogatory found he only constructively possessed the firearm.

Petitioner raised this issue in his Amended Motion for Post-Conviction Relief filed August 14, 2017. ECF Doc. 20-10 at 13. There, he argued that "Defendant stood trial for the charge of actual 'Possession by a Convicted Felon'" but "the jury was in a view to believe there to be 'constructive possession,'" which Ash defines as "control or dominion over property without actual possession or custody of it." Thus, according to Ash, the crime charged in the Information is inconsistent with the crime found by the jury.

Although Ash raised this argument in his post-conviction motion, it is still procedurally barred because Ash's appeal of the 3.850 motion was dismissed for failure to prosecute. ECF Doc. 20-12 at 22. The "failure to take timely appeal of state postconviction court's denial of petition constitutes procedural default." *Coleman v. Thompson*, 501 U.S. 722, 740 (1991). Also, a defendant has only thirty (30) days to file an appeal under Fla. R. Crim. P. 3.850(k). Therefore, Ash cannot return to state court to exhaust this claim, and it is procedurally defaulted.

Also, as with the above grounds, Ash cannot show cause and prejudice. The state court judge rejected this claim on the merits. ECF Doc. 20-11 at 2. The judge explained that Ash was charged with violating Fla. Stat. § 790.23, which makes it unlawful for "any person to own or have in his or her care, custody, possession, or control any firearm" if that person had been convicted of a felony. *Id.* at 6. The judge further noted that, under Florida law, "[p]ossession of a firearm by a convicted

felon can be proven either by an actual or a constructive possession theory."
*Bundrage v. State*, 814 So. 2d 1133, 1134 (Fla. Dist. Ct. App. 2002) (citing *Daniels
v. State*, 718 So.2d 1274 (Fla. 2d DCA 1998); *Wilcox v. State*, 522 So.2d 1062 (Fla.
3d DCA 1988).  The judge explained that the special interrogatory, therefore, did
not concern an element of the offense; instead, it concerned whether the mandatory
minimum enhancement in § 775.087(2)(a)(1) applied to Ash.  That section provides
that a person convicted of possession of a firearm by a felon who, also, "during the
commission of the offense . . . actually possessed a 'firearm,'" is subject to a ten-
year mandatory minimum sentence.

The undersigned finds the state court's denial of relief on this ground was
neither contrary to clearly established law nor an unreasonable determination of the
facts, as necessary to grant habeas review.  *See Williams v. Taylor*, 529 U.S. 362
(2000).  Any type of possession – not just actual possession -- is sufficient to violate
Fla. Stat. § 790.23.  Thus, Ash cannot show the reasonable probability of a different
outcome even if this claim is considered on federal review.  *See Crawford v. Head*,
311 F.3d 1288, 1327-28 (11th Cir. 2002) (petitioner must show at least a reasonable
probability of a different outcome to demonstrate prejudice).

Ash also does not and cannot allege he was actually innocent of the offense,
nor could he, given the testimony of Detective Adams that he saw the bag placed
outside the window, coupled with the spontaneous incriminating statements by Ash

and the testimony by Ash's girlfriend that only she and Ash were in the house that morning, which makes it unlikely that any "constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray v. Carrier*, 477 U.S. 478, 479–80 (1986).

    4.   <u>Ground Five: Issues Involving Habitual Felony Offender Enhancement</u>

Ash argues he does not qualify for a habitual felony offender enhancement because (1) his previous convictions were not qualifying convictions; (2) his current conviction is not a qualifying conviction; and (3) the use of a prior conviction to enhance his sentence for the current conviction violates his Fifth Amendment right against double jeopardy. ECF Doc. 14 at 11. The State responds that this claim is (1) procedurally defaulted and Ash cannot show cause, prejudice or a fundamental miscarriage of justice; (2) the claim is barred from federal review because it involves purely state law; and (3) even if considered on the merits, the claim fails. ECF Doc. 20 at 37-40. The undersigned agrees.

As with the other grounds discussed above, this claim is essentially one of trial error, which should have been brought on direct appeal but was not, and thus is procedurally defaulted. Also, as discussed above with the other grounds, the fact that Ash framed this issue as one of IATC in his 3.850 motion is not sufficient to exhaust the underlying substantive claim. *See e.g., Pietri*, 641 F.3d 1276 at 1289. And even if it was, Ash failed to prosecute the appeal of this 3.850 motion.

Also, because the claim would be denied on its merits, Ash cannot show cause and prejudice or a fundamental miscarriage of justice. Ash qualified as a habitual felony offender under Fla. Stat. 775.084(1)(a). That provision requires that (1) Ash have been convicted of at least two felonies, one of which is not a drug crime; (2) Ash committed the current crime while on supervision or within five years of the date of conviction of the last prior felony; (3) Ash's current felony is not a drug crime; and (4) the relevant felonies have not been pardoned or set aside.

As the prosecutor pointed out at sentencing, Ash had "four convictions for possession with intent with cocaine, four simple possessions of cocaine, two battery on law enforcement, fire fighter, EMS, and then a burglary of an occupied structure, conveyance." ECF Doc. 20-5 at 4-5. Therefore, he had at least two prior felonies, several of which were not drug crimes. Also, the court recognized the current conviction was not a drug crime and was within five years of his last felony conviction. Ash presented no argument that the convictions were set aside, or he was pardoned. Therefore, he met all the requirements of the HFO enhancement.

Also, Ash's Double Jeopardy claim fails on the merits. The Double Jeopardy Clause "protects against a second prosecution for the same offense after acquittal, against a second prosecution for the same offense after conviction, and against multiple punishments for the same offense." *Justices of Boston Mun. Ct. v. Lydon*, 466 U.S. 294, 306–07 (1984). Using a defendant's prior conviction to enhance his

sentence does not violate double jeopardy.  *See Nichols v. United States*, 511 U.S. 738, 747 (1994) (enhancement statutes "do not change the penalty imposed for the earlier conviction," because they "penaliz[e] only the last offense committed by the defendant." (citation omitted)); *United States v. Ortiz–Williams*, 221 F. App'x 913, 915 (11th Cir. 2007) ("It is well-established that sentencing enhancements for prior criminal conduct do not constitute multiple punishment for the prior offenses.") (citing *United States v. Fuentes*, 107 F.3d 1515, 1522 (11th Cir. 1997)).

Thus, Ash cannot show a reasonable probability of a different outcome if this claim is considered on federal review.  *See Crawford v. Head*, 311 F.3d 1288, 1327-28 (11th Cir. 2002) (petitioner must show at least a reasonable probability of a different outcome to demonstrate prejudice).  Also, as set forth above, Ash does not argue, nor could he, based on the evidence presented at trial, that his is actually innocent.

Finally, whether Ash was deprived of due process by the court's application of the state's HFO sentencing statute is an issue solely of state law; and only when a state law error rises to the level of fundamental unfairness does it implicate federal constitutional due process subjecting it to federal habeas review.  *See, e.g., Osborne v. Wainwright*, 720 F.2d 1237, 1238 (11th Cir. 1983).  As explained above, the trial court did not commit any error in applying the HFO enhancement, much less any error which rises to the level of fundamental unfairness.

### B.     Ground Four:  *Nelson* Hearing

Ash argues that the trial court erred in failing to timely address his request for a *Nelson* inquiry prior to sentencing.  ECF Doc. 14 at 8; ECF Doc. 200-9 at 27-28 (Initial Brief of Appellant).  Ash raised this claim on direct appeal and the First DCA affirmed the trial court's judgment without opinion.  Although this claim has been exhausted, the undersigned finds that the claim is one that is not subject to federal habeas review and, even if it was, the state court's decision is supported by a reasonable basis.  *Id.*

In *Nelson v. State*, 274 So.2d 256 (Fla. 4th Dist.Ct.App.1973), the court held that, to protect an indigent defendant's right to the effective assistance of appointed counsel, where it appears that the defendant wishes to discharge his attorney, the trial court should make an inquiry as to the reason for the request to discharge.  *Id.* at 258.  If incompetency of counsel is the reason, the court must inquire further to see if ineffective assistance of counsel is being rendered.  *Id.* at 259.  If reasonable cause for such belief appears, the court should make a finding to that effect on the record and appoint a substitute attorney who should be allowed adequate time to prepare the defense.  "If no reasonable basis appears for a finding of ineffective representation, the trial court should so state on the record and advise the defendant that if he discharges his original counsel the State may not thereafter be required to appoint a substitute. . . .  If the defendant continues to demand a dismissal of his

court appointed counsel, the trial judge may in his discretion discharge counsel and require the defendant to proceed to trial without representation by court appointed counsel." *Id.* at 259.

As an initial matter, whether the trial court performed a proper *Nelson* inquiry is an issue of state law and provides no basis for federal habeas relief. *See Mosley v. Crosby*, No. 5:04–CV–233–SPM, 2006 WL 5201354, at *6 (N.D.Fla. Mar.12, 2006) ("even if the trial court violated the *Nelson* rule, a violation of a state rule of procedure or of a state law is not itself a violation of the federal constitution") (citing *Engle v. Isaac*, 456 U.S. 107, 119 (1982)); *see also Scott v. Sec'y, Dep't of Corr.*, No. 6:09–cv–478–Orl–18KRS, 2010 WL 4116559, at *6 (M.D.Fla. Oct.18, 2010) ("[t]his Court cannot make a determination regarding whether the Florida court properly abided by Florida law and conducted a proper hearing regarding Petitioner's request to discharge counsel" (citations omitted)). "No case has been cited for the proposition that the federal constitution mandates the *Nelson* procedure, and this court has found none. It must be concluded, as argued by respondent, that this is purely an issue of state law not cognizable in this court." *Mosley*, 2006 WL 5201354, at *6.

Moreover, even if this claim for relief was subject to federal review, it fails on the merits. Since the First DCA affirmed this decision without opinion, for this Court to grant habeas review, Ash must show "there was no reasonable basis for the

state court to deny relief." *Harrington v. Richter*, 562 U.S. 86, 98 (2011). The undersigned finds that such a reasonable basis exists because the trial court complied with the *Nelson* requirements. The trial court did not receive Ash's request for a *Nelson* hearing until after it rendered the sentence, even though Ash had been given a chance to speak before sentence was rendered. ECF Doc. 20-5. After the court issued the sentence, the prosecutor informed the court that he just received a copy of "a notice of potential *Nelson* hearing that the defendant filed." *Id.* at 15. The notice was handwritten and stated in its entirety, "I Corintheus M. Ash pro se would like to file a *Nelson* hearing in case # 14001322. Reason conflict between counsel and client." ECF Doc. 20-1 at 171 (capitalization and punctuation corrected).

The court indicated it had not seen a copy of the motion and asked Ash for the basis of the motion. ECF Doc. 20-5 at 15. Thus, the court took the first step required by *Nelson*, by making an inquiry as to the reason for the request to discharge. Ash argued his counsel did not file a motion to suppress and wrongly told him not to testify. *Id.* at 16. While the court did not expressly find ineffective representation, the court nonetheless took the next step under *Nelson*, by appointing a substitute attorney to prepare the next steps in the defense. Substitute counsel was, in fact, appointed and represented Ash on appeal. Therefore, this claim would fail, even if considered on the merits.

## IV.    CONCLUSION

For the reasons above, the undersigned recommends the petition be DENIED, without an evidentiary hearing or the issuance of a certificate of appealability.

### A.    Evidentiary Hearing

The undersigned finds that an evidentiary hearing is not warranted.    In deciding whether to grant an evidentiary hearing, this Court must consider "whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief."    *Schriro v. Landrigan*, 550 U.S. 465, 474 (2007).    Upon consideration, the undersigned finds that the claims in this case can be resolved without an evidentiary hearing since four of the claims are procedurally defaulted and the only exhausted claim is not subject to federal review, or otherwise, fails on the merits.    *See Schriro*, 550 U.S. at 474.

### B.    Certificate of Appealability

Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts provides: "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."    If a certificate is issued, "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)."    28 U.S.C. § 2254 Rule 11(a).    A timely notice of appeal must still be filed, even if the court issues a certificate of appealability.    28 U.S.C. § 2254 Rule 11(b).

After review of the record, the Court finds no substantial showing of the denial of a constitutional right. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000) (explaining how to satisfy this showing) (citation omitted). Therefore, it is also recommended that the district court deny a certificate of appealability in its final order.

The second sentence of Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." Rule 11(a), Rules Governing Section 2254 Cases. If there is an objection to this recommendation by either party, that party may bring such argument to the attention of the district judge in the objections permitted to this report and recommendation.

Accordingly, it is respectfully RECOMMENDED:

1.     That the amended petition be DENIED without an evidentiary hearing.

2.     That a certificate of appealability be DENIED.

3.     That the clerk be directed to close the file.

At Pensacola, Florida, this 18th day of February, 2020.

*/s/ Hope Thai Cannon*

**HOPE THAI CANNON**
**UNITED STATES MAGISTRATE JUDGE**

NOTICE TO THE PARTIES

Objections to these proposed findings and recommendations may be filed within 14 days after being served a copy thereof. Any different deadline that may appear on the electronic docket is for the court's internal use only and does not control. A copy of objections shall be served upon the magistrate judge and all other parties. A party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions. See 11th Cir. R. 3-1; 28 U.S.C. § 636.